UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Lance Wickner,	Court File No. 12-cv-1397 (DWF/LIB)

        Plaintiff,

v.	**REPORT AND RECOMMENDATION**

Julie Rose, et al.,

        Defendants.

---

This matter comes before the undersigned United States Magistrate Judge upon Defendants the Minnesota Sex Offender Program and Christina Joseph's[1] Motion to Dismiss. [Docket No. 13]. The present motion has been referred to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1). (Order of Reference [Docket No. 26]).

For reasons articulated herein, the Court recommends **GRANTING in part** and **DENYING in part** Defendants' Motion to Dismiss. [Docket No. 13].

**I.	BACKGROUND**

Plaintiff Lance Wickner ("Plaintiff"), a patient civilly committed to the Minnesota Sex Offender Program ("MSOP"), proceeding *pro se*, initiated the present case on June 12, 2012, naming as Defendants the Minnesota Sex Offender Program, Julie Rose, Thomas Lundquist, Katherine Klancher, Amanda Furey, Nathan Johnson, Jack Leritz, Darien Menten, David Rose, Christopher Vanderpool, Jennifer Bonrud, Christina Joseph, Aaron Koll, Lorin Peterson, Logan

---

[1] Plaintiff's Complaint refers to Defendant Joseph as Tina Joseph, however, Defendants' motion and accompanying memorandum indicate that Defendant Joseph's name is actual Christina Joseph. As such, the Court refers to her by her proper name, Christina Joseph. The Court does the same with Defendants David Rose, Christopher Vanderpool, Jennifer Bonrud, Nathan Johnson, and Corinne Halverson-Hoadley. (See Compl. [Docket No. 1]; Defs.' Mem. [Docket No. 16]).

Zuk, Mark Agurkis, Darrel Jensen, Justin Martin, James Martinez, Corinne Halverson-Hoadley, unidentified John Doe, and Unidentified Grievance Coordinator (collectively "Defendants"). (Compl. [Docket No. 1]).[2] Plaintiff demands relief pursuant to 42 U.S.C. § 1983, alleging that Defendants "deprived plaintiff of rights protected by the Constitution[.]" (Id.). Plaintiff generally references causes of action pursuant to 42 U.S.C. § 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution. (Id. at Claims For Relief, ¶¶ 1–3). Plaintiff sues all named Defendants in only their individual capacities, (Id. at ¶¶ 3–23), and he purports to sue the MSOP in its official capacity. (Id. at ¶ 24).

Plaintiff generally alleges that Defendants "are not enforcing the media possession policy in a constitutional manner, in violation of the Kruger settlement that created the media possession policy." (Id. at ¶ 79). Specifically, Plaintiff alleges that Defendants confiscated a number of items which Plaintiff alleges were not contraband or prohibited material under the media possession policy. (Id. at ¶¶ 40, 55, 69, 78).

Plaintiff alleges that on August 22, 2011, Defendant Joseph confiscated from Plaintiff two personal pen pal ads, a personal offender summary, four personal offender photos, and a drawings of two nude women. (Id. at ¶¶ 26–27). On August 23, 2011, an unidentified MSOP employee confiscated from Plaintiff thirty envelopes, seventy-five magazine and newspaper clippings, and a large bundle of Department of Corrections paperwork, and on August 25, 2011, Defendants Vanderpool and Rose confiscated from Plaintiff an "unidentified bundle of miscellaneous paperwork containing drawings, writings, newspaper clippings and addresses and a letter with photos." (Id. at ¶¶ 28–29).

---

[2] The present case was stayed by three separate Orders on June 19, 2012; October 27, 2014; and August 20, 2015. (Orders [Docket Nos. 3, 4, 5]). The stay in the present case was lifted on April 14, 2016. (Order Lifting Stay [Docket No. 7]).

2

On September 13, 2011, Plaintiff wrote to the Media Review Team requesting the return of his letters and photos. (Id. at ¶ 30). Three days later, Defendant Rose informed Plaintiff that some of the confiscated items had been deemed contraband, and that those items that were not deemed contraband had to remain with the other items until all items had been evaluated. (Id. at ¶ 31).

Plaintiff further alleges that on November 14, 2011, Defendant Klancher confiscated from Plaintiff numerous letters and a drawing of two nude women, and he sent those materials to Defendant Lundquist, the clinical director. (Id. at ¶¶ 32–33). Also on November 14, 2011, Plaintiff wrote Defendant Lundquist "requesting that he review the denial of the items confiscated on 8-22-11, 8-23-11 and 8-25-11." (Id. at ¶ 34). On November 17, 2011, Defendant Lundquist replied to Plaintiff asking if Plaintiff was also appealing the determination that his letters were prohibited materials. (Id. at ¶ 35). Two days later, on November 19, 2011, Plaintiff responded to Defendant Lundquist that "he was appealing that the material was prohibited." (Id. at ¶ 36). However, Plaintiff alleges that Defendant Lundquist never gave Plaintiff an appeal; instead, he directed Defendant Bonrud to destroy the letters which Defendant Bonrud allegedly did on January 13, 2012. (Id. at ¶¶ 37–38). Plaintiff alleges that the remainder of his property was lost by unidentified MSOP employees. (Id. at ¶ 39).

Plaintiff further alleges that on January 31, 2012, he received a television series DVD set entitled "Spartacus, Gods of the Arena." (Id. at ¶ 41). That DVD set was confiscated and sent to the Media Review Team by Defendant Koll on January 31, 2012, and on February 2, 2012, Defendants Peterson and Zuk designated the DVD set as prohibited material. (Id. at ¶¶ 42–43).

Plaintiff then filed a Grievance Request Form on February 4, 2012. (Id. at ¶ 44). On February 10, 2012, an unidentified grievance coordinator allegedly refused to process Plaintiff's

grievance form for appeal reasoning that "the grievance was inappropriate in content or writing" and that "the required documentation [was] not attached to show that [Plaintiff had] attempted informal resolution[.]"(Id. at ¶ 45). The grievance coordinator further advised Plaintiff to use the appropriate form and follow the chain of communication. (Id.). Plaintiff conclusorily alleges that he was following the appropriate process.

Nevertheless, on February 11, 2012, Plaintiff wrote an informal grievance to Defendant Lundquist alleging that the grievance coordinator was not allowing Plaintiff to file a grievance and informing Defendant Lundquist that Plaintiff wanted to appeal the determination that the DVD set was prohibited material. (Id. at ¶ 48). On February 16, 2012, Defendant Lundquist informed Plaintiff that he had requested the DVD be forwarded to him so he could process Plaintiff's appeal of the DVD. (Id. at ¶ 49). On March 5, 2012, Plaintiff received a "contraband notice from the property department, informing the plaintiff that he had 10 business days to send the property out or it would be disposed of by staff on 3-19-12." (Id. at ¶ 51). It does not appear that Plaintiff made arrangements for the DVD to be sent out of the MSOP. Instead, on March 22, 2012, Plaintiff again attempted to file a Grievance Request Form requesting an appeal, and on March 26, 2012, "an unidentified grievance coordinator refused to process the plaintiff's grievance form for appeal, stating [] 'use form supplied via Grievance Policy.'" (Id. at ¶¶ 52–53). Plaintiff alleges that, at the time he filed his Complaint, the "MSOP Property staff" was still in possession of Plaintiff's DVD set. (Id. at ¶ 54).

Plaintiff further alleges that on April 21, 2012, he received twenty-five photos of women in swimsuits which were confiscated the same day from his mail by Defendant Agurkis. (Id. at ¶¶ 56–57). On March 24, 2012, Plaintiff received in the mail another twenty-five photos of women in swimsuits which were confiscated that same day by Defendant Jensen. (Id. at ¶¶ 58–

4

59). On May 7, 2012, Defendant Martin labelled the fifty photos "as counter therapeutic and returned them to the plaintiff, stating that they reinforce a problem area related to the sexual offending cycle." (Id. at ¶¶ 60–61).

On May 17, 2012, Defendants Halverson-Hoadley and Menten confiscated a pair of leather gloves from Plaintiff's room, and they informed Plaintiff that the gloves were contraband because the fingers had been cut off of the leather gloves. (Id. at ¶ 73). Plaintiff alleges that he had previously received permission from a security counselor to alter the gloves when he was residing in the Omega 3 unit of the MSOP using scissors he signed out from the staff there. (Id. at ¶¶ 70–72).

On May 21, 2012, Plaintiff received five photos of women in swimsuits which were confiscated from Plaintiff's mail by Defendant Jensen that same day. (Id. at ¶¶ 63–64). On May 25, 2012, Defendant Rose labelled the five photos as counter therapeutic, and he returned the photos to Plaintiff. (Id. at ¶ 65). On May 26, 2012, Plaintiff received another twenty photos of women in swimsuits which were confiscated from Plaintiff's mail that same day by Defendant Martinez. (Id. at ¶¶ 66–67). On May 30, 2012, Defendant Rose labelled the twenty photos as counter therapeutic, and he returned them to Plaintiff. (Id. at ¶ 68).

Lastly, Plaintiff alleges that on May 23, 2012, he received three books entitled *The Mammoth Book of Tattoos*, *The Pregnancy Bible*, and *Natural Conception and Pregnancy*, which were confiscated that same day by Defendants Martinez and Koll. (Id. at ¶ 75–76). On May 30, 2012, Defendant Rose determined that all three books were prohibited material, and he allegedly sent the books to be disposed of by property staff. (Id. at ¶ 77).

Plaintiff alleges that Defendants' actions demonstrate that Defendants are not enforcing the media possession policy in a constitutional manner. (Id. at ¶ 79). Plaintiff does not provide a copy of the media possession policy then in place. (See Id.).

In his "Claims For Relief," Plaintiff asks the Court to find that Defendants have violated and continue to violate Plaintiffs rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution reasoning that Defendants "have failed and continue to fail to enforce the media possession policy, created under the Kruger settlement in a constitutional manner, consistent with the constitutional rights of civilly-committed patients[.]" (Id. at Claims For Relief, ¶¶ 1–2). Plaintiff also requests the Court find that the Media Possession Policy by Patients in MSOP and the Minnesota Statute Section 246B.04, subdivision 2, are unconstitutional as applied to MSOP clients, including Plaintiff. (Id. at Claims For Relief, ¶ 3).

Plaintiff request as relief that the Court enter preliminary and permanent injunctions enjoining Defendants from violating Plaintiff's "rights to free speech, access to the media and to be free from unlawful seizures[;] . . . from confiscating commercial produced media, which society does not consider to be pornographic" unless it is clearly pornographic; and "from censoring the plaintiffs [sic] right to free speech." (Id. at Relief Requested, ¶¶ A–C). Plaintiff also seeks compensatory and punitive damages in the amount of $250,000. (Id. at Relief Requested, ¶ D).

Construing Plaintiff's pro se Complaint liberally, it appears that Plaintiff alleges three specific claims pursuant to 42 U.S.C. § 1983. Those claims can reasonably be inferred to be one count of unreasonable search and seizure, in violation of the Fourth Amendment, regarding the manner in which the MSOP Media Possession Policy is being applied to Plaintiff; a violation of his First Amendment rights including a freedom of speech claim involving MSOP's media

6

policy as that policy is being applied to him; and procedural and substantive due process claims under the Fourteenth Amendment including challenges to grievance procedure regarding the MSOP's media policy.[3]

## II. DEFENDANTS' MOTION TO DISMISS. [DOCKET NO. 13].

Defendants Joseph and the MSOP move the Court for an order dismissing Plaintiff's Complaint with prejudice for lack of subject matter jurisdiction and a failure to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Defs.' Mot. to Dismiss [Docket No. 13]). Only the MSOP Defendant and Defendant Joseph bring the present motion asserting that at the time the motion was filed they were the only two Defendants who had been served with civil process.

The Court will first address the issue of service as to each Defendant.

On July 5, 2016, the MSOP Defendant and Defendant Joseph filed the present motion. On July 6, 2016, two separate summonses were returned executed and filed indicating that the MSOP had been served with a copy of the summons and complaint in the present case and that the Minnesota Attorney General's Office had been served with a copy of the summons and complaint in the present case. [Docket Nos. 21, 22].

On August 30, 2016, the undersigned issued an Order notifying Plaintiff that the version of the Federal Rules of Civil Procedure in effect at the time that Plaintiff initiated the present lawsuit required a plaintiff to demonstrate proof of service "within 120 days after the complaint

---

[3] Listed in the Claims section of Plaintiff's Complaint, Plaintiff also asks the Court to declare "the Media Possession Policy by Patients in MSOP and the Minnesota Statute Section 246B.04, subdivision 2" unconstitutional as applied to clients at the MSOP, including Plaintiff. (Compl., [Docket No. 1], Claims for Relief at ¶ 3) (emphasis added). Plaintiff does not appear to argue that the policy itself is unconstitutional; instead, he argues that Defendants are applying the policy in an unconstitutional manner with specific reference to the items allegedly confiscated in his Complaint. While Plaintiff lists this as a third Claim, it is not an independent cause of action. Rather, it serves simply as a request for a specific form of relief that is dependent on the Court determining that the actions of Defendants were unconstitutional, as alleged in Plaintiff's other claims. (See Id., Claims for Relief at ¶¶ 1–2). See gen., Essling's Homes Plus, Inc. v. City of St. Paul, 356 F. Supp. 2d 971, 984 (D. Minn. 2004) ("A successful action for declaratory judgment requires a viable underlying cause of action.").

is filed, [or] the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against the defendant or order that service be made within a specific time." (Order, [Docket No. 30], at 2) (quoting Fed. R. Civ. P. 4(m) (amended December 1, 2015)). Pursuant to Rule 4(m), the Court directed Plaintiff to provide proof of service or demonstrate good cause for an extension of time to serve Defendants Julie Rose, Thomas Lundquist, Katherine Klancher, Amanda Furey, Nathan Johnson, Jack Leritz, Darien Menten, David Rose, Christopher Vanderpool, Jennifer Bonrud, Aaron Koll, Lorin Peterson, Logan Zuk, Mark Agurkis, Darrel Jensen, Justin Martin, James Martinez, and Corinne Halverson-Hoadley, failing which the Court would recommend dismissal for failure to effect proper service and failure to prosecute. (Order, [Docket No. 30], at 2).

On September 8, 2016, documents from the U.S. Marshal's service were filed indicating that the following Defendants had been mailed a copy of the summons and complaint:[4] Christopher Vanderpool, Julie Rose, Nathan Johnson, David Rose, Amanda Furey, Jennifer Bonrud, Christina Joseph, Aaron Koll, Logan Zuk, James Martinez, Corinne Halverson-Hoadley, Darrell Jensen, and Mark Agurkis. [Docket Nos. 31, 32]. With the exception of Defendant Joseph, these Defendants have not accepted service by mail in lieu of personal service. Other documents were also filed which indicate that the U.S. Marshal's service mailed copies of the summons and complaint to the following Defendants, but those documents were returned undelivered: Katherine Klancher, Thomas Lundquist, Lorin Peterson, Justin Martin, Jack Leritz, and Darien Menten. [Docket Nos. 31, 32, 33].

While Plaintiff purports to have served Defendants Christopher Vanderpool, Julie Rose, Nathan Johnson, David Rose, Amanda Furey, Jennifer Bonrud, Aaron Koll, Logan Zuk, James

---

[4] While the Marshal's service's form is not entirely clear as to exactly what documents were mailed, it appears that Defendants may have also been mailed a waiver of service form. See [Docket Nos. 31–33].

Martinez, Corinne Halverson-Hoadley, Darrell Jensen, and Mark Agurkis by mail, service by mail is only an effective means of service if the Defendants voluntarily accept service by mail in lieu of personal service. See Fed. R. Civ. P. 4. Plaintiff has failed to demonstrate that any of the Defendants Christopher Vanderpool, Julie Rose, Nathan Johnson, David Rose, Amanda Furey, Jennifer Bonrud, Aaron Koll, Logan Zuk, James Martinez, Corinne Halverson-Hoadley, Darrell Jensen, Mark Agurkis, Katherine Klancher, Thomas Lundquist, Lorin Peterson, Justin Martin, Jack Leritz, or Darien Menten have voluntarily accepted service by mail in lieu of personal service or waived service of process under Rule 4(d).[5] Plaintiff has also failed to provide proof that he has served a summons and a copy of the Complaint on Defendant Christina Joseph, however, as mentioned above, in the present Motion to Dismiss, [Docket No. 13], Defendant Joseph acknowledged that she had "been served with Plaintiff's lawsuit." [Docket No. 13].

The time in which Plaintiff was directed to provide proof of service or demonstrate good cause for an extension of time to serve Defendants has come and gone, and Plaintiff has neither provided proof of service as to Defendants Christopher Vanderpool, Julie Rose, Nathan Johnson, David Rose, Amanda Furey, Jennifer Bonrud, Aaron Koll, Logan Zuk, James Martinez, Corinne Halverson-Hoadley, Darrell Jensen, Mark Agurkis, Katherine Klancher, Thomas Lundquist, Lorin Peterson, Justin Martin, Jack Leritz, and Darien Menten nor articulated good cause as to why the Court should grant him any further extension of time to do so.

---

[5] Absent such a waiver, the Rule provides that an individual being served within a Judicial District of the United States is served by:

(1) following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
(2) doing any of the following:
  A. delivering a copy of the summons and of the complaint to the individual personally;
  B. leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
  C. delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)

Therefore, pursuant to Rule 4(m), the Court recommends that Plaintiff's Complaint, [Docket No. 1], as alleged against Defendants Christopher Vanderpool, Julie Rose, Nathan Johnson, David Rose, Amanda Furey, Jennifer Bonrud, Aaron Koll, Logan Zuk, James Martinez, Corinne Halverson-Hoadley, Darrell Jensen, Mark Agurkis, Katherine Klancher, Thomas Lundquist, Lorin Peterson, Justin Martin, Jack Leritz, and Darien Menten, be **DISMISSED without prejudice** for failure to effect service and for lack of prosecution. See Widtfeldt v. Daugherty, 587 F. App'x 992 (8th Cir. 2014) (*per curiam*, unpublished) (holding that the district court did not abuse its discretion in dismissing the action without prejudice when plaintiff failed to establish that he had properly effected service within 120 days after filing his complaint).

Having determined the Defendants who have not been properly served should be sua sponte dismissed pursuant to Rule 4(m), the Court now turns to the present motion which is brought by the only two Defendants who have been properly served or have voluntarily accepted service; the MSOP and Christina Joseph. (Mot. to Dismiss [Docket No. 13]).

### A.     Standards of Review

### 1.     Lack of Subject Matter Jurisdiction

"A court must dismiss an action over which it lacks subject matter jurisdiction." Pomerenke v. Bird, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction. Such a motion may challenge at any time the sufficiency of the pleading on its face or may challenge the factual truthfulness of its allegations. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729, n.6 (8th Cir. 1990). In a factual challenge, courts may consider

matters outside of the pleadings, and no presumptive truthfulness attaches to the plaintiff's factual allegations. Osborn, 918 F.2d at 729–30, n.6.

### 2. Failure to State a Claim upon Which Relief May Be Granted

Federal Rule of Civil Procedure 8(a)(2) requires a complaint articulate "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. When evaluating a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, "[courts] look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999). Courts draw all reasonable inferences in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

Courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible." See Id. at 679–81. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; see also Farnam Street Fin., Inc. v. Pump Media, Inc., No. 09-cv-233 (MJD/FLN), 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 556 U.S. at 678).

Even considering the liberal construction courts give *pro se* plaintiffs' pleadings, the facts alleged in a complaint must state a claim for relief as a matter of law. Sorenson v. Minnesota Dep't of Corr., No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012) (citing Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980)). "Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted). See e.g., Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law."). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

**B.    Analysis**

As noted above, Plaintiff alleges claims against Defendant Joseph only in her individual capacity and against the MSOP entity Defendant in its purported official capacity. (Compl. [Docket No. 1]).

**1.    Plaintiff's Claims against the Entity Defendant the MSOP**

The Eleventh Amendment prohibits lawsuits against a state unless the state has unequivocally consented to suit or Congress has abrogated the states' immunity for a particular federal cause of action. Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996) (citations omitted); Faibisch v. University of Minnesota, 304 F.3d 797, 800 (8th Cir. 2002). States are entitled to Eleventh Amendment immunity from claims alleged pursuant to 42 U.S.C. § 1983; a state is not a "person" within the meaning of Section 1983. Hadley, 76 F.3d at 1438 ("Section 1983 does not override Eleventh Amendment immunity."); Will v. Michigan Dep't of State Police, 491 U.S. 58, 65, 109 S. Ct. 2304, 2309, 105 L. Ed. 2d 45 (1989). Eleventh Amendment immunity extends to agencies of the state. Minnesota Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (citing Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 101 S. Ct. 1032, 67 L.Ed.2d 132 (1981)).

The MSOP is a facility operated by the Minnesota Department of Human Services. See Daniels v. Jesson, No. 13-cv-736, (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. July 22, 2014); Uselman v. Minnesota Dept. of Human Services, No. 11-cv-2913, 2011 WL 5520443 (D. Minn. Oct. 21, 2011). The Minnesota Department of Human Services is an agency of the State of Minnesota. See Daniels, 2014 WL 3629874, at *5. The MSOP is maintained by the Commissioner of the Minnesota Department of Human Services. See Minn. Stat. Ann. §

246B.02.[6] As such, a suit against the MSOP must be necessarily construed as alleged against the State of Minnesota. See Geiger v. Minnesota Dept. of Human Services, No. 13-cv-2140 (JRT/LIB), 2013 WL 5596599, at *3 (D. Minn. Oct. 11, 2013).

A suit against the state itself or an entity of the state is barred by the Eleventh Amendment regardless of the relief sought. Alabama v. Pugh, 438 U.S. 781, 782 (1978) (unless sovereign immunity is waived by state or expressly abrogated by U.S. Congress, suits against state and its board of corrections are barred by Eleventh Amendment, regardless of relief sought); Will v. Michigan Dept. of State Police, 491 U.S. 58, 66–67 (1989); Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995); Glick v. Henderson, 855 F.2d 536, 540 (8th Cir. 1988). "In the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." Rose v. State of Nebraska, 748 F.2d 1258, 1262 (8th Cir. 1984) (emphasis added) (quoting Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 (1984) (citations omitted)). "The State of Minnesota, for example, is generally immune from suit in federal court under the Eleventh Amendment," and any claim brought against it is generally "doomed from the outset." Richmond v. Minnesota, No. 14-cv-3566 (PJS/JSM), 2014 WL 5464814, at *3 (D. Minn. Oct. 27, 2014) (citing Pugh, 438 U.S. at 781). As an entity of the State of Minnesota, the MSOP entity enjoys this same immunity from suit as the state regardless of the relief sought. See Pugh, 438 U.S. at 782. "[A] state agency which is the sole creation of the state has no separate identity, and thus cannot be stripped of its official character." Glick, 855 F.2d at 540.

---

[6] Plaintiff names the MSOP entity as a Defendant and not the Minnesota Department of Human Services or its Commissioner. (See Compl. [Docket No. 1]). The Court precedes assuming arguendo that the MSOP is a properly suable agency regarding policy enforcement or creation, as opposed to a suit brought against the Minnesota Department of Human Services or its Commissioner.

Liberally construing Plaintiff's Complaint and making the arguendo assumption noted above, the present record before the Court is still devoid of any evidence or authority demonstrating either the state's consent to suit or Congressional abrogation of the state's sovereign immunity. Therefore, the Court recommends that Plaintiff's Section 1983 claims as alleged against the MSOP entity itself be **DISMISSED** with prejudice for lack of subject matter jurisdiction.[7]

Accordingly, the only claims remaining in relation to the present motion are Plaintiff's individual capacity claims against Defendant Joseph.

### 2. Plaintiff's Claims Against Defendant Joseph

The facts in Plaintiff's Complaint, [Docket No. 1], as they relate specifically to Defendant Joseph are minimal. Plaintiff alleges that Defendant Joseph is a security counselor employed at the MSOP. (Id. at ¶ 13). Plaintiff alleges that on August 22, 2011, Defendant Joseph confiscated from Plaintiff two (2) personal pen pal ads, one (1) personal offender summary, four (4) personal offender photos, and a drawing of two (2) nude women. (Id. at ¶¶ 26–27). Plaintiff does not allege the contents of either the personal pen pal ads or the personal offender summary, nor does he offer context as to the personal offender photo or drawing, except to state that the drawing contained two nude women. (See Id.). Plaintiff only conclusorily alleges that none of the property confiscated was "contraband by policy or prohibited material by policy." (Id. at ¶ 40).

---

[7] A plaintiff may, however, in certain circumstances maintain an action against a government official in his or her official capacity if the complaint seeks only injunctive or prospective relief. See Edelman v. Jordan, 415 U.S. 651, 663 (1974); Grand River Enterprise Six Nations, Ltd. v. Beebe, 467 F.3d 698, 701 (8th Cir. 2006). In any event, in the present case even liberally construing Plaintiff's Complaint he has made no such claim. (See Compl. [Docket No. 1]). Plaintiff has sued only the MSOP entity Defendant in its official capacity. Plaintiff has not sued any employee, manager, or director at the MSOP in their official capacity; nor has the Plaintiff sued the Minnesota Department of Human Services or its commissioner or director in their official capacities. (See Id.). Therefore, Plaintiff has failed to allege any action against any government official in his or her official capacity.

The principal overarching argument in Defendants' motion to dismiss is that there was no constitutional violation involved in the confiscation of any of the Plaintiff's materials. In addressing whether Plaintiff's First Amendment rights were violated Defendants argue that the "MSOP's media policy and the seizures alleged in the Complaint do not violate Plaintiff's First Amendment rights" because the MSOP Media satisfies that requirements of Turner v. Safley, 482 U.S. 78 (1987). (See Defs.' Mem., [Docket No. 16], at 15–19).[8] This argument, however, is materially disconnected from Plaintiff's Complaint. Plaintiff does not contend that the media policy itself is unconstitutional. Instead, Plaintiff's Complaint alleges that the manner in which Defendants are applying the media policy to the specific items in Plaintiff's Complaint is unconstitutional. Plaintiff's claims are specific to the allegedly confiscated items in his Complaint and the manner in which the MSOP's Media Policy was applied to those items. This is evident in allegations contained within Plaintiff's Complaint where he conclusorily alleges that each allegedly confiscated item failed to meet the requirements of the Media Policy. (Compl., [Docket No. 1], at ¶¶ 40, 55, 69, 78). Plaintiff does not allege that the Media Policy itself is unconstitutional; he alleges an as applied claim, i.e., that Defendants "are not enforcing the media possession policy in a constitutional manner[.]" (Id. at ¶ 79).

Nevertheless, even construing Plaintiff's Complaint liberally, it still fails to state a claim upon which relief may be granted. Plaintiff alleges that Defendants violated his rights under the First, Fourth, and Fourteenth Amendments when the allegedly confiscated items were determined to be contraband or prohibited items. However, Plaintiff fails to allege any specific facts as to why the allegedly confiscated items should not have been determined to be contraband

---

[8] The main theme of Defendants' argument regarding whether Plaintiff's Fourth Amendment rights were violated is that the seizure of the allegedly confiscated materials was not unreasonable because the items were determined to be contraband or prohibited items under the Media Policy, and Plaintiff failed to show the material could not be prohibited under the First Amendment. (See Defs.' Mem., [Docket No. 16], at 20).

or prohibited items under the media policy then in place. Plaintiff only offers the mere legal conclusion that the confiscated items were not "contraband by policy or prohibited material by policy." (Compl., [Docket No. 1], at ¶ 40). Plaintiff merely alleges that the items were confiscated and seeks to have the Court accept as fact his own legal conclusion that the items should not have been determined to be prohibited items or contraband.[9]

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. Plaintiff's mere assertions that the allegedly confiscated items were not contraband or prohibited items are simply his legal conclusions and, as such, they do not satisfy the requirements of Iqbal or Twombly. See Barton v. Taber, 820 F.3d 958, 963–64 (8th Cir. 2016) (accepting facts but not mere legal conclusions alleged in the

---

[9] Moreover, neither from the allegations in the Complaint nor from the exhibits submitted by the Defendants in support of their motion to dismiss is the Court able to discern what provisions of the media policy are now at issue. The operative provisions of the media policy then in place have not been pled in the Complaint nor a copy provided to the Court. A determination of whether or not a plausible allegation that the Media Policy was being applied in an unconstitutional manner has been made necessarily requires some review of the policy itself. Plaintiff has not pled the operative provisions of the policy. Defendants attempted to provide the Court with a copy of the MSOP's Media Policy; however, a review of the policy provided indicates that it was not the policy in effect at the time the items in Plaintiff's Complaint were allegedly confiscated and deemed to be prohibited items or contraband. On its face, the provided policy has an effective date of August 4, 2015. (Jessica Geil Affidavit, [Docket No. 17-1], Exhibit A at 2). Notably, the provided policy indicates that it superseded "MSOP Policy 303.230 'Media Possession by Client,' 12/2/14" and "MSOP Policy 602.230, 'Media Possession by CPS Clients,' 12/2/14." (Id. at 7). The allegations in Plaintiff's Complaint transpired between August 22, 2011, and May 30, 2012. [Docket No. 1]. It is apparent that the policy provided by Defendants is not the same policy which was in effect at the time of the incidents alleged in Plaintiff's Complaint. A review of other cases in this District related to the MSOP's previous media possession policies demonstrate that there are at least some differences in the policy presented by Defendants in the present case and previous policies, especially the policy in effect in 2007. See gen. Ivey v. Mooney, No. 5-cv-2666 (JRT/FLN), 2008 WL 4527792, at *8 (D. Minn. Sept. 30, 2008) (quoting the 2007 policy entitled the Media Possession By Patients in the Minnesota Sex Offender Program which differs from the provided policy); Semler v. Ludeman, No. 9-cv-0732 (ADM/SRN), 2010 WL 145275, at *9 (D. Minn. Jan. 8, 2010) (same). The Court cannot speculate as to whether the 2007 policy was the policy still in effect at the time of the incidents alleged in Plaintiff's Complaint, but the face of the policy provided by Defendants combined with the policy quotations from previous MSOP media policies demonstrates that the policy at the time of the allegations in Plaintiff's Complaint is not the same policy provided by Defendants in the present case. The provided policy varies in at least some aspects from the previous MSOP media policies.

complaint as true for purposes of a Rule 12(b)(6) motion); Hager v. Arkansas Dept. of Health, 735 F.3d 1009, 1014–15 (8th Cir. 2013) (finding plaintiff had not stated a § 1983 claim for gender discrimination because her allegation that she was discharged under circumstances in which men were not was a legal conclusion couched as a factual allegation, which need not be accepted as true under Twombly); Walker v. Barrett, 650 F.3d 1198, 1209 (8th Cir. 2011) ("[L]egal conclusions, without any supporting factual allegations, are insufficient to survive a motion to dismiss.").

In the present case, even liberally construing Plaintiff's pro se Complaint, accepting all facts pled within as true, and making all reasonable inferences in Plaintiff's favor, the factual allegations related to the constitutionality of the MSOP Media Policy as applied to Plaintiff do not nudge the claim "across the line from conceivable to plausible." See Iqbal, 556 U.S. at 678–81. Simply put, the Complaint does not contain sufficient facts to support any claim related to the application of the MSOP Media Policy or sufficient facts for the Court to determine the viability of any such claim.

The Court cannot save Plaintiff's Complaint by speculating as to the contents of the allegedly confiscated items; it cannot speculate as to the media policy that was in effect at the time the allegations in Plaintiff's Complaint took place, and therefore, it cannot speculate as to whether or not the content of the items allegedly confiscated did not violate the media policy then in effect. Without any specific facts alleged in the Complaint relative to these concerns, the Court cannot determine if a plausible showing can be made under Rule 12(b)(6) that any of Plaintiff's constitutional rights were in fact violated by the manner in which Defendants applied to him the MSOP Media Policy in effect at the time the alleged incidents occurred.

Therefore, as to Defendant Joseph, the Undersigned recommends that Plaintiff's claims be **DISMISSED** pursuant to Rule 12(b)(6). Even given the failures of Plaintiff's Complaint, however, it is not impossible that his Complaint might be amended to allege sufficient facts upon which relief could be granted, and therefore, the Undersigned recommends that dismissal be without prejudice.

### III. CONCLUSION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED:**

1. That Plaintiff's Complaint as alleged against Defendants Christopher Vanderpool, Julie Rose, Nathan Johnson, David Rose, Amanda Furey, Jennifer Bonrud, Aaron Koll, Logan Zuk, James Martinez, Corinne Halverson-Hoadley, Darrell Jensen, Mark Agurkis, Katherine Klancher, Thomas Lundquist, Lorin Peterson, Justin Martin, Jack Leritz, and Darien Menten, be **DISMISSED without prejudice** for failure to effect service and for lack of prosecution;

2. That Defendants' Motion to Dismiss, [Docket No. 13], be **GRANTED in part** and **DENIED in part**, as set forth above and summarized below;

   a. That Plaintiff's Complaint as alleged against the Minnesota Sex Offender Program entity Defendant be **DISMISSED with prejudice**; and

   b. That Plaintiff's Complaint as alleged against Defendant Christina Joseph be **DISMISSED without prejudice**.

Dated: October 19, 2016

s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.